UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : Case No. 19-cr-429 (JEB) |
| DEWITT CHANDLER, | : |
| Defendant. | : |

**UNITED STATES' MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(A) and 18 U.S.C. § 3142(f)(2)(A). The United States requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

## I. Procedural History

On December 20, 2019, a federal grand jury sitting in the District of Columbia returned an indictment charging Defendant with two counts of communicating a threat through interstate communications, in violation of 18 U.S.C. § 875(b). At the initial appearance on April 14, 2020, the United States orally moved for detention pending trial pursuant to the above-referenced provisions of the federal bail statute, which was granted by the Court.

## II. Legal Authority and Argument

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). The parties may proceed by way of proffer and hearsay is permitted. Id.;

United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the United States is not required to "spell out in precise detail how the United States will prove its case at trial, nor specify exactly what sources it will use." United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986); United States v. Williams, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. Smith, 79 F.3d at 1210; Williams, 798 F. Supp. at 36.

There are four factors under Section 3142(g) that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. 18 U.S.C. § 3142(g). A review and understanding of the facts and circumstances in this case require the Court to conclude that there is no condition or combination of conditions that would assure the safety of the community. 18 U.S.C. § 3142(e)(1).

**A.      Nature and Circumstances of the Offenses Charged**

The first factor, the nature and circumstances of the offenses charged, weighs in favor of detention.

On January 22, 2019, at approximately 9:30 am, Defendant called a Social Security Administration ("SSA") call center located in Philadelphia, PA to request assistance with his benefits.[1] While speaking with SSA Benefits Representative Reginald Johnson, Defendant became irate and threatened: "I (inaudible) find your fucking office and cut your fucking balls

---

[1] Defendant's call was recorded in the ordinary course of SSA's government functions. Defendant was made aware that his call was being recorded before the conversation began.

off!" Mr. Johnson then got his supervisor, SSA Benefit Authorizer Kia Williams, on the line. While speaking with Ms. Williams, Defendant became irate and began screaming and cursing. During this conversation, Defendant made the following threats:

> If I don't get my fucking money on the first, I'm going to the social security office and I'm killing everyone over there! And I'm gonna hold you responsible, and I'm gonna find out who you are, and I'm gonna fuckin kill you! Do you understand who the fuck I am bitch? I want my motherfuckin money bitch! Right now! …You fuckin black fuckin faggot bitch…If I fuckin hear that I don't get my motherfuckin money on the first, I'm gonna kill every black person at the Social Security Office, right across the street from BET[2] bitch, you hear me now bitch?...where's my fuckin money you pedophile incest nigger!...If it ain't up there on the first I'm gonna fuckin kill you bitch!

Ms. Williams was concerned that Defendant would harm one of her co-workers and reported Defendant's call immediately.

Approximately 90 minutes later, Defendant called a SSA call center located in Queens, NY to have his benefits reinstated. SSA Benefit Authorizer Kerena Hibbert informed Defendant that he had failed to provide the SSA office with an address verification letter and that, as a result, his benefits were stopped. When Ms. Hibbert asked Defendant to confirm his specific current address, Defendant became agitated and began yelling over the phone. When Ms. Hibbert asked Defendant to calm down, Defendant made the following threats:

> No I don't think so, here's what's gonna happen and I want you to write it down. If you don't turn my money back on, cuz I walked into the social security office in Washington D.C., I'm gonna walk back over there, and I'm gonna fuckin kill everyone. I'm gonna find out – I'm gonna fuckin kill you. This isn't a fuckin joke. I don't give a fuck if you call the FBI, listen to me right now…hear what I fuckin tell you, if this doesn't work out my fuckin way…I'm gonna fuckin kill everybody in that whole fuckin office. And I'm gonna find out where you fuckin work…I'm gonna fucking kill every one of you…you hear me now bitch?...put my fuckin money back on line or I'll fucking kill you you spic bitch….If I call you back and

---

[2] Defendant was apparently referring to the SSA field office located at 1905 9 St Suite B NE, Washington D.C. This office is located on the same block as BET.

you don't have my money, I'm gonna start stabbing everyone in Social Security, I'll kill everyone in there, I don't give a fuck…but if I don't get my money, I'm gonna kill people at that fuckin office…If I don't get my money bitch, I'm gonna fucking kill you!...If I have to fucking find you, I swear to fucking Christ I'll hurt you…you fucking wetback bitch…you don't wanna die, turn on my money…It's on 9th Street, I'm in Washington, I'll be happy to go over there and just start stabbing people…I'm gonna walk into that office tomorrow and kill everyone in there…

Defendant was interviewed by Special Agents of the SSA-OIG on September 3, 2019. At the time, Defendant was detained in Arlington County jail on another matter. Defendant waived his *Miranda* rights and admitted to making the threatening statements. Specifically, Defendant stated "Yeah, I cussed those people out. I said I will kill them." Defendant also said that he made "vague death threats" and that he was not healthy at the time of the call because it was "cold outside." He also stated that he "was not sorry a bit." Defendant admitted to owning 2 knives, and stated that he's "a knife person" and that he "prefers knives."

B.      **Weight of the Evidence Against the Defendant**

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. The evidence against the defendant is very strong. Defendant's threats were captured on a recorded line, and he later admitted to the crime after waiving his *Miranda* rights.

C.      **The Defendant's History and Characteristics**

The third factor, the history and characteristics of the person, similarly weigh in favor of the detention. In addition to the instant case, Defendant is charged in D.C. Superior Court, Case Number 2019-CMD-10908 [3] with Simple Assault, Possession of a Prohibited Weapon, and Attempted Threats to do Bodily Harm. According to the charging instrument, Defendant was

---

[3] Defendant is currently non-compliant with the terms of his release in that case and a bench warrant has been issued for his arrest by Judge Crowell.

4

arrested on August 21, 2019, after an MPD dispatcher announced a lookout for a white male wearing a black shirt, black pants and a black baseball hat backwards on his head as the assailant in an aggravated assault on the sidewalk at 8th and E Streets NW, Washington, D.C. Responding officers found Defendant walking near that location wearing matching clothing and approached. During a protective patdown, officers discovered two black folding knives in Defendant's possession. Officers then contacted the victim who stated that Defendant had chased him with a knife after the victim accidentally bumped into him on the sidewalk. The victim stated that, after chasing him for a few minutes, Defendant said "next time I see you, I will kill you." The victim identified the Defendant, and his description of the knife Defendant chased him with matched a knife in Defendant's possession when officers arrived.

Just two months prior to that arrest, on June 21, 2019, Defendant was arrested in Arlington County, Virginia, in Case Number GC19002428-00.[4] In that case, Defendant was stopped after a uniformed officer observed him littering. During the stop, Defendant admitted that he had weapons on his person and gave consent to search his person and the backpack he was carrying. The officer recovered a Bowie knife in a sheath from Defendant's waistband and a nun chuck from Defendant's backpack. The officer also recovered a small amount of marijuana and another person's wallet with credit cards from the back pack. Defendant was charged with Credit Card Theft and two counts of Concealment of a Weapon. Defendant pleaded guilty to Concealment of a Weapon on April 9, 2020, and was sentenced to 12 months' imprisonment, with all 12 months suspended.

---

[4] Defendant was extradited to Virginia following his arrest in 2019-CMD-109083 because he had failed to comply with his release orders in Arlington County. Defendant was apparently detained in Arlington County from August 27, 2019, until he pleaded guilty on April 9, 2020.

On August 7, 2015, Defendant was convicted of two counts of Terroristic Threats in Nueces County, Texas (Corpus Christi). Defendant's sentence in that case is currently unknown.

On April 20, 2015, Defendant was convicted of Criminal Trespass in Nueces County, Texas (Corpus Christi). Defendant's sentence in that case is currently unknown.

On February 28, 2011, Defendant was convicted of Assault in Nueces County, Texas (Corpus Christi). Defendant's sentence in that case is currently unknown.

Defendant's history very clearly establishes him as a man who carries weapons on his person, threatens people with bodily harm, and is capable of inflicting the harm that he threatens. Moreover, given that Defendant has been incarcerated since August 2019 and, as noted in the Pretrial Services Report, has no known residency information, it is unlikely that Defendant has a stable enough residence to guarantee his presence in Court as required.

**D.     Danger to the Community**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention.

The threats made by Defendant in this case, all of which were captured on a recording, are chilling. Defendant has demonstrated that he has no qualm about threatening to kill people – be they individual public servants, "every black person in the Social Security Administration," or a pedestrian on the streets of Washington, DC. Defendant's spontaneous threats of violence, coupled with his multiple arrests for carrying weapons and his admission that he is a "knife guy" render it impossible to believe that he could safely walk the streets of the District of Columbia.

Defendant's dangerousness is compounded by his lack of a permanent residence or the existence of a third-party custodian who could guarantee his presence at court hearings as

scheduled. This fear is clearly demonstrated by Defendant's non-compliance in both Arlington County and D.C. Superior Court – failures which led to Defendant's detention from August 2019 to April 2020.   Simply put, there is no way to reasonably assure either the safety of the community or Defendant's presence in Court if he is released into the community.

### E.    Defendant's Pretrial Detention Will Not Expose Him to COVID-19

As the Court is no-doubt aware, a substantial amount of litigation has arisen regarding pretrial detention at D.C. Jail in the wake of the COVID-19 pandemic. Defendant was arrested in Virginia and is detained in the Alexandria Detention Center (ADC).  If Defendant is detained pending trial he will remain in ADC. Unlike D.C. Jail, there are no known cases of COVID-19 at ADC. Thus, any argument that Defendant should be released because his pretrial detention will result in COVID-19 exposure is moot.[5]

### III. Conclusion

All four of the Bail Reform Act factors weigh heavily in favor of detention in this case. Due to Defendant's demonstrated history of carrying concealed weapons, threatening violence, and committing or attempting to commit acts of violence, there is no combination of release conditions that could reasonably assure the safety of the community if he is released. Furthermore, given Defendant's past failures to comply with release conditions, and his lack of as stable address, there is no combination of release conditions that could reasonably assure his presence in Court if he is released.

---

[5] As the Court is also likely aware, the mere existence of COVID-19 is not a basis to release an inmate from confinement. Such decisions must be based on the Bail Reform Act factors enumerated in 18 U.S.C. § 3142. United States v. Phillips; 20-CR-36 (ABJ) (Docket Entry 33); United States v. Lee, 18-CR-298 (KBJ) (Docket Entry 25); See also United States v. Edwards, 20-mj-50, at *6 (RMM) (March 30, 2020 D.D.C.) ("Although [the defendant's] alleged health problems may make him at heightened risk if he contracts the coronavirus, he would be at risk even if he were not incarcerated.")

WHEREFORE, the United States respectfully requests that the Court issue an Order granting its motion that the defendant be held without bond pending trial.

>Respectfully submitted,
>TIMOTHY J. SHEA
>United States Attorney
>D.C. Bar No. 437437
>
>By: /s/ *James B. Nelson*
>JAMES B. NELSON
>D.C. Bar No. 1613700
>Assistant United States Attorney
>Violent Crime & Narcotics Trafficking Section
>555 4th Street, N.W.
>Washington, D.C. 20530
>(202) 252-6986
>james.nelson@usdoj.gov

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel via the Electronic Case Filing (ECF) system, on April 15, 2020.

                      By:      */s/ James B. Nelson*
                                JAMES B. NELSON
                                D.C. Bar No. 1613700
                                Assistant United States Attorney
                                Violent Crime & Narcotics Trafficking
                                Section 555 4th Street, N.W.
                                Washington, D.C. 20530
                                (202) 252-6986
                                james.nelson@usdoj.gov